UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>— against —<br><br>Michael Crumble, Ramell Markus, and Tyrone Burch | **18-cr-32 (ARR)**<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

Michael Crumble, Ramell Markus, and Tyrone Burch stand accused of kidnapping the complainant, "John Doe," at gunpoint. According to the government, they then held Doe captive for a number of hours, during which time they struck him and burned him with an iron, until he agreed to provide them with money and narcotics. They also demanded that Doe provide them with the address of the mother of a man incarcerated in Maine, "Individual 1," where they believed Individual-1 had stashed additional cash and drugs. For these alleged acts, they have been indicted for kidnapping, kidnapping conspiracy, Hobbs Act extortion, conspiracy to commit Hobbs Act extortion, and brandishing a firearm in the course of a crime of violence.

The government has moved to introduce the prior convictions of Markus and Burch under Rule 609 if they testify, as well as to introduce evidence of Markus's prior drug dealings and interactions with the complainant in its case-in-chief. First Gov't Mot. in Lim., ECF No. 39 ("Gov't MiL").[1] In a supplemental filing, it also seeks to admit certain evidence in its case-in-chief against Crumble. Second Gov't Mot. in Lim., ECF No. 53 ("2d Gov't MiL"). Markus and Crumble oppose the use of their prior convictions to impeach them if they testify. Resp. to First Gov't Mot. in Lim., ECF No. 50 ("Crumble Resp."); Mem. in Opp. to First Gov't Mot. in Lim.,

---

[1] In its initial filing, the government also sought to introduce prior convictions of Burch under Rule 609 if he testified. Gov't MiL 23–24. Since the time of this filing, however, Mr. Burch pleaded guilty. *See* Min. Entry for Change of Plea Hearing, ECF No. 54.

ECF No. 55 ("Markus Resp."). Markus and Crumble also oppose the admission of some, but not all, of the material the government proposes to admit in its case-in-chief. Markus Resp.; Resp. to Second Gov't Mot. in Lim., ECF No. 59 ("2d Crumble Resp."). For the following reasons, I anticipate granting the government's applications in part and denying them in part.

## I.   The government's motions to admit evidence in its direct case

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The Second Circuit has adopted an "inclusionary approach" to Rule 404(b) evidence, which "allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)). "Yet this inclusionary approach does not invite the government 'to offer, carte blanche, any prior act of the defendant in the same category of crime.'" *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Garcia*, 291 F.3d at 137). Such evidence is also still subject to balancing under Rule 403 and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Pitre*, 960 F.2d at 1119.

Evidence of prior bad acts or uncharged crimes is also admissible as direct evidence in a criminal case, not subject to the strictures of 404(b), "if that conduct 'arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (quoting *United States v.*

*Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). Direct evidence introduced to complete the narrative or as background material is also still subject to balancing under Rule 403. *United States v. Hsu*, 669 F.3d 112, 119 (2d Cir. 2012); *United States v. Colombo*, 869 F.2d 149, 153 (2d Cir. 1989).

### A. As to Markus

The government seeks to introduce the following evidence against Markus:

> that Markus has sold heroin and other drugs for the last approximately six years, including going on drug-related trips with Doe to Maine after Markus's release from prison in Maine for drug trafficking; that Markus had a package of narcotics delivered to Doe; that Markus requested to have the package given back to Markus; and that all three defendants demanded that Doe provide narcotics, cash and the Address, where further narcotics and/or cash might be located, so that they could rob that property. The government expects to prove such evidence through witness testimony and through Markus's December 2012 narcotics trafficking conviction.

Gov't MiL 7. Markus does not object to the admission of most of this evidence in the government's case-in-chief, but he does object to the admission of his 2012 conviction for selling narcotics. Markus Resp. 1. Markus argues that "[t]he introduction of his conviction does not add to the government's attempt to prove defendants' knowledge, intent, motive, plan etc [sic] but is simply an attempt to prejudice the Defendant in front of the jury." *Id.*

I agree that the bulk of this material is admissible to complete the government's story or as inextricably intertwined with the charged crimes. *See Robinson*, 702 F.3d at 37. The testimony about past dealings between Markus and the complainant, including narcotics transactions, will provide context for the relationships between the various players, as well as background on why Markus thought that Doe knew about drugs and money belonging to Individual 1. And the danger of unfair prejudice does not substantially outweigh the probative value of this testimony.

On the other hand, I am inclined to agree with Markus that evidence of his 2012 drug conviction is not admissible under this exception. As he notes, "[t]he fact of the prior conviction

in and of itself does not establish the connection between the defendant and Doe, unless the Government is alleging that Doe was involved or prosecuted along with the Defendant some 6 years ago." Markus Resp. 1. Moreover, any evidence that merely tends to establish that Markus is a drug dealer raises the possibility that the jury will take it as propensity evidence. Therefore, on the government's direct case, I will limit the testimony about Markus's prior drug transactions to those occasions involving Doe, Individual-1, or others involved in this incident.

The government argues in the alternative that Markus's 2012 drug conviction is admissible in its case-in-chief under Rule 404(b) to show knowledge, motive, and intent. Go'vt MiL 13. But motive and intent are established by the facts of the alleged crimes themselves; the value of introducing a drug conviction to explain either motive or intent to extort money and drugs is marginal. And Markus's knowledge is most clearly established by the course of his dealings with Doe and Individual-1, not his 2012 drug conviction. Any probative value this conviction may have as to these issues seems substantially outweighed by the danger of unfair prejudice. Indeed, "prior convictions are far more likely to be received as potent evidence of propensity than other prior bad acts routinely offered under Rule 404(b) because they bear the imprimatur of the judicial system and indicia of official reliability." *McCallum*, 584 F.3d at 476.

Finally, the government argues that Markus's 2012 conviction is "admissible [under 404(b)] to corroborate testimony that Markus is a heroin dealer who served time in prison and that he and the other defendants kidnapped and extorted Doe to obtain narcotics. . . . The conviction and sentence also corroborate Markus's connection to Maine . . . ." Gov't MiL 13– 14. Although the government is correct that corroboration is a "permissible purpose of 'other acts' evidence under Rule 404(b)," *id.* at 14, the authority that it cites does not support the admission of Markus's 2012 conviction for that purpose at this time. In *United States v. Everett*,

the principal case relied upon by the government, the Second Circuit held that "[o]ther crimes evidence . . . is only admissible for corroborative purposes, if the corroboration is 'direct and the matter corroborated is significant.'" 825 F.3d 658, 660 (2d Cir. 1987) (quoting *United States v. Mohel*, 604 F.2d 748, 754 (2d Cir. 1979)). This means that the evidence must be "important—as distinct from trivial—evidence" and that it must not be "wholly disconnected, remote, or collateral to the matter corroborated." *Id.* At this point, I cannot see how proof of Markus's prior conviction provides either direct or significant corroboration of the government's case.[2] I therefore will not allow the government to introduce evidence of Markus's prior conviction in its direct case unless the defense opens the door. If the defense's impeachment of the government's case or other aspects of the defense case put Markus's prior drug dealings or connections to Maine at issue such that this prior conviction directly and significantly corroborates the government's case, however, the government may renew its motion to admit this evidence. *See Luce v. United States*, 469 U.S. 38, 41–42 (1984) (noting that a district court's ruling on a motion in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer").

### B. As to Crumble

The government also seeks to introduce the following evidence against Crumble in its direct case:

> (1) additional instances of narcotics trafficking, including that (a) co-conspirator Tyrone Burch gave Crumble one-half of a pound of marijuana that John Doe had provided as a result of the charged kidnapping and extortion schemes, and Crumble requested that Burch take a portion of the other narcotics provided by

---

[2] The other case that the government relies on is neither binding nor particularly persuasive. The court's analysis in *Basciano* consisted solely of the following: "I find that the Government's proposed uncharged acts are properly admissible in order to show the development of relationships of trust, provide background on the enterprise, and corroborate testimony of cooperating witnesses." *United States v. Basciano*, No. 03-CR-929, 2006 WL 385325, at *4 (E.D.N.Y. Feb. 17, 2006).

Doe; and (b) between approximately October 2016 and December 2016, Burch gave Crumble cocaine on multiple occasions for him to sell and gave Crumble heroin once for him to sell; (2) two plans by Crumble and Burch to rob drug dealers, including (a) a plan to rob a drug dealer in Maine, including on one occasion in August 2015 when Crumble, Burch and a third individual drove to Maine and sat outside a suspected marijuana dealer's apartment, and another occasion thereafter when Crumble requested that Burch again go to Maine but Burch declined; and (b) once in January 2018, when Crumble, possessing the firearm used during the charged December 2017 offenses, and Burch sat outside suspected marijuana dealers' house on Long Island; and (3) a scheme between approximately September 2016 and January 2018 in which Crumble and Burch caused drug users to purchase cell phones on credit and then resold them at full value to individuals who were to export the phones overseas.

2d Gov't Mil 2. Again, the government argues that this evidence is admissible as direct evidence and/or as other crimes evidence under Rule 404(b). *Id.* at 2–5. Crumble consents to the admission of evidence that "Burch gave Crumble a portion of the marijuana extorted from John Doe and that Crumble asked him to take a portion of the other narcotics provided by Doe" because this "indicates how the proceeds from the crime were split." 2d Crumble Resp. 1. But he objects to the admission of the rest of this material. *Id.* at 2–6.

I agree with the government that much of this evidence is relevant for one or more non-propensity purposes and is thus admissible under Rule 404(b), subject to Rule 403's balancing test. The Second Circuit has repeatedly held that, in conspiracy cases, "'other acts' evidence is admissible as background information, to demonstrate the existence of a relationship of mutual trust, or to 'enable the jury to understand how the illegal relationship between the co-conspirators developed.' *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996)); *see also United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000) (holding that evidence of a defendant's "prior criminal conduct with his co-conspirators [is] relevant 'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal

relationship between the participants in the crime developed.'" (quoting *Pitre*, 960 F.2d at 1119)).

Here, I find that most of the disputed evidence is relevant as background material that helps to

explain the relationship between Burch, a co-conspirator and testifying witness, and Crumble.

Some of this evidence may also be admissible to show knowledge and intent, if these are

disputed issues at trial. *See McCallum*, 584 F.3d at 475 (requiring that 404(b) evidence be relevant

to a disputed issue). But when other crimes "evidence is offered for the purpose of establishing

the defendant's knowledge or intent, we require that the government 'identify a similarity or

connection between the two acts that makes the prior act relevant to establishing knowledge of

the current act.'" *Id.* (quoting *Garcia*, 291 F.3d at 137). Thus, the evidence of drug deals and the

cell phone fraud scheme is not admissible for this purpose. Moreover, unless it is apparent that

intent will be in dispute, "as a general rule, the offer of evidence to prove the defendant's intent

or knowledge should await the conclusion of the defendant's case." *Pitre*, 960 F.2d at 1120.

Turning first to the history of prior drug transactions between Crumble and Burch, I find

the proffered evidence to be pertinent background information that is highly explanatory of the

context of the relationship between Burch, a government witness, and Crumble, the co-

conspirator with whom Burch will attest he committed the charged crimes. This is not unlike the

probative value of the evidence of prior drug dealings between Markus and John Doe, discussed

above, which both provides background as to their relationship and helps explain the events that

are the subject of trial. This evidence also easily passes muster under Rule 403, as its probative

value is not "substantially outweighed by the danger . . . of unfair prejudice." Fed. R. Evid. 403.

To the contrary, this evidence regarding the nature of the relationship between Burch and Crime

is both quite probative and far less inflammatory than the crimes charged in this case. Further, I

trust that any possible undue prejudice can be dispelled by an appropriate limiting instruction.

*See, e.g.*, *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002). Should defense counsel seek such an instruction, I ask that he present me with a proposed instruction.

The proposed evidence of Crumble and Burch's plans to rob drug dealers prior to the charged crimes in December 2017 is also highly relevant background material that provides context about their relationship and helps explain why these two individuals would come together to commit the charged crimes. I note, too, that although defense counsel has assured me that "identity and thus opportunity is not a disputed issue in this case," 2d Crumble Resp. 5, he nowhere stipulates that his client's knowledge and intent will not be in dispute at trial. If they are disputed, this evidence may be admissible to show knowledge and intent given that the prior schemes to rob drug dealers appear to be quite similar to the charged crimes. Thus, for example, if Crumble acknowledges his presence at the location of the charged crimes, but disputes that he knew of or intended to participate in the criminal conduct of other conspirators, this evidence may be admissible to show knowledge and intent in the government's direct or rebuttal case.

Whether probative for one or both of the above reasons, this evidence will easily meet the requirements of Rule 403. As proffered by the government, the August 2015 plan to rob a suspected drug dealer is far less inflammatory than the present incident: although Crumble and Burch drove to Maine to carry this plan out, it never came to fruition and no robbery took place. Even less inflammatory is Crumble's proposal that Burch accompany him on another similarly motivated road trip to Maine, a request that Burch apparently declined. I also note that the other acts evidence will come here in the form of cooperating witness testimony, not the far more prejudicial form of evidence of a prior conviction. *Cf. McCallum*, 584 F.3d at 476. Further, to the extent that the jury could possibly construe this evidence as establishing Crumble's propensity to rob drug dealers, a proper limiting instruction as to the limited purposes for which this evidence

is being introduced can dispel this potential prejudice. Again, should defense counsel seek such an instruction, I ask that he present me with a proposed draft.

By contrast, Burch and Crumble's plan to rob a drug dealer in January 2018, *after* the date of this case, is of only marginal relevance as background material. Certainly, "'[s]ubsequent act' evidence may be admitted under Rule 404(b)." *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998). But events that occurred after the charged crimes cannot shed much light, if any, on Burch and Crumble's relationship at the time of this incident. Moreover, given the evidence of similar prior conduct that the government plans to present at trial, this evidence would be largely cumulative. Thus, if offered as background material, I will likely exclude it under Rule 403. Should knowledge and intent become relevant at trial, however, the government may request the admission of this evidence again and I will re-evaluate whether it is admissible under Rule 403.

Finally, I am not inclined to admit the proffered evidence that Crumble and Burch engaged in a separate scheme to have drug users buy cell phones on credit and then sell the phones. While this evidence has some probative value as to the relationship between Burch and Crumble, I consider it to be far less probative than the other prior bad acts evidence that I anticipate will be admitted. Thus, although I do not consider this evidence highly prejudicial, I nonetheless anticipate excluding it under Rule 403 as unduly cumulative and collateral.

## II. The government's motion to admit prior convictions as impeachment evidence

Rule 609 provides that, if a defendant in a criminal case testifies, his or her "character for truthfulness" may be impeached by evidence of a criminal conviction under certain conditions. If "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," evidence of the conviction must be admitted. Fed. R. Evid. 609(a)(2). As well, if the crime was punishable by more than one year of imprisonment, this

evidence must generally be admitted "if the probative value of the evidence outweighs its prejudicial effect." *Id.* 609(a)(1)(B). But if "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the conviction may only be admitted if "its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect." *Id.* 609(b) (emphasis added). Finally, evidence of juvenile adjudications is never admissible against defendants in a criminal case. *Id.* 609(d).

In applying Rule 609(a)(1), district courts must "examine which of a witness's crimes have elements relevant to veracity and honesty and which do not." *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005). But "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *Id.* Indeed, the Second Circuit has "admonished" district courts that even felonies that "do not bear directly on honesty such as to be automatically admissible under Rule 609(a)(2) . . . may nonetheless be highly probative of credibility." *Id.* While "all rule 609(a)(1) felonies are not equally probative of credibility . . . many are significantly probative of a witness's propensity for truthfulness." *Id.* (citations omitted).

Courts in the Second Circuit consider five factors in determining whether the probative value of a prior conviction outweighs its prejudicial effect under Rule 609(a)(1): "[1] the impeachment value of the prior crimes, [2] the date of the conviction and the Defendant's subsequent history, [3] the degree of similarity between the past crimes and this crime, [4] the centrality of the Defendant's credibility in this case, and [5] the importance of the Defendant's testimony." *United States v. Brown*, 606 F. Supp. 2d 306, 311–12 (E.D.N.Y. 2009) (quoting *United States v. Jenkins*, No. 02 CR. 1384, 2003 WL 21047761, at *2 (S.D.N.Y. May 8, 2003)).

If a district court permits evidence of a conviction to be used to impeach a criminal defendant under Rule 609(a)(1), it must presumptively allow "inquiry into the 'essential facts' of

the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed." *Estrada*, 430 F.3d at 616. Nonetheless, although "Rule 609(a)(1) presumes that some details of a witness's felony conviction will be considered," if the statutory name or nature of an offense is not more probative than prejudicial, a court must exclude it. *Id.* In this regard, "different felonies . . . bear on credibility to varying degrees. District courts must thus undertake an individualized balancing analysis under Rule 609(a)(1) before excluding evidence of the statutory name of a witness's crime." *Id.*; *see also Brown*, 606 F. Supp. 2d at 312 ("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense." (citations omitted)).

### A. As to Markus

If Markus testifies, the government seeks to impeach him with four convictions:

> (1) a December 2012 conviction for unlawful trafficking of narcotics in violation of Maine law, for which he was sentenced to 30 months' imprisonment; (2) a February 2006 conviction for Criminal Possession of a Controlled Substance in the Fifth Degree (Intent to Sell), in violation of New York law, for which he was sentenced to 18 months' to 3 years' imprisonment . . . ; (3) a February 2006 conviction for Grand Larceny in the Fourth Degree, in violation of New York law, for which he was sentenced to a [sic] 18 months' imprisonment; and (4) an October 1999 conviction for Robbery in the Third Degree, in violation of New York law, for which he was sentenced to one year imprisonment.

Gov't MiL 20. Markus opposes the use of all four of these convictions to impeach him under Rule 609. Markus Resp. 2–3. He argues that "[t]hree of these convictions are over 10 years old and their staleness alone makes them inadmissible under Rule 609." *Id.* at 2. In support of this argument, he notes that "[t]he Second Circuit has recognized that convictions over 10 years old [should] be admitted 'very rarely and only in exceptional circumstances.'" *Id.* at 2–3 (quoting *United States v. Mahler*, 579 F.2d 730, 735 (2d Cir. 1975)). Markus also argues that the probative value of admitting his 2012 drug conviction is outweighed by its prejudicial effect because "even

though drug offenses are not usually considered crimes of dishonesty . . . it would have the same prejudicial impact given juries [sic] low regard for drug trafficking." *Id.* at 3.

After considering the five factors discussed in *Brown*, I find that Markus's 2012 drug-trafficking conviction would likely be admissible to impeach his credibility if he testifies. As to the first factor, the Second Circuit has indicated that drug-sale convictions can have significant probative value as to character for truthfulness. *See United States v. Hayes*, 553 F.2d 824, 828 n.8 (2d Cir. 1977) ("In terms of credibility a conviction for sale of narcotics may fall somewhere between a conviction for narcotics smuggling and one for narcotics possession."). And given the evidence the prosecution plans to introduce in its case-in-chief of Markus's prior drug dealings, admitting this conviction can only cause minor additional prejudice. As for the second factor, this conviction was quite recent. As for the third factor, the conviction is quite dissimilar from this case: while both involve drugs, this case involves a violent kidnapping and extortion. Finally, as to the fourth and fifth *Brown* factors, I am unable to make a determination at this point. Nonetheless, should Markus testify, it seems quite possible that this case will come down to a credibility contest between Markus and the complainant, weighing heavily in favor of admitting this conviction. If I allow this conviction to come in under Rule 609, the government will be allowed to introduce the statutory name of the offense, its date, and the sentence imposed.

On the other hand, I do not expect to allow Markus's 2006 convictions for grand larceny and drug possession to be used to impeach him. As an initial matter, I note that although these convictions occurred over ten years ago, he was released from custody for the two 2006 convictions on May 16, 2008. Letter of AUSA Keith D. Edelman (Apr. 19, 2018), ECF No. 56 ("Edelman Letter"). This date is (just) under ten years from the start of trial on May 7, 2018, which means that these convictions are subject to analysis under Rule 609(a)(1) rather than Rule

609(b). Thus, the government must only show that these convictions' probative value outweighs their prejudicial value, not that their probative value substantially outweighs their prejudicial value.[3] Nonetheless, the age of these convictions diminishes their probative value since "the age of a prior conviction does reflect somewhat on its value as an index of defendant's current credibility." *United States v. Washington*, 746 F.2d 104, 106 (2d Cir. 1984); *see also Brown*, 606 F. Supp. 2d at 315. I also note that Markus's counsel previously requested a continuance; had I granted him a two and one-half week continuance rather than a one-week continuance, Markus's release date for these convictions would have been over ten years from the start of trial.

Neither of Markus's 2006 convictions has great probative value, especially in light of their age. While Markus's drug possession conviction was for possession with intent to sell, I nevertheless do not find that a conviction for possession in the fifth degree has significant bearing on credibility. *See Brown*, 606 F. Supp. 2d at 319 ("[D]rug possession in the third degree has little bearing on the veracity of [the defendant] as a witness and thus, ranks fairly low on the impeachment value scale."). This conviction is also of little probative value because it is both less serious and less recent than the 2012 drug sale conviction; any probative value it has would be largely cumulative. As for Markus's grand larceny conviction, although larceny can be a *crimen falsi* if it involves dishonesty or false statements, *see United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998), the underlying facts of this conviction appear to involve the use of force, not deception. The RAP sheet provided by the government indicates that Markus was indicted for robbery in

---

[3] In a letter filed on April 27, Markus argues that the date of the underlying conduct, not the date of release from confinement, should govern the question of a conviction's admissibility under 404(b) or 609. Second Mot. in Lim. as to Gov't 404(b) Request, ECF No. 61. But he provides no authority for this proposition, which is flatly contradicted by the text of Rule 609. Instead, the more stringent standard of 609(b) applies only "if more than 10 years have passed since the witness's conviction or release from confinement for it, *whichever is later*." Fed. R. Evid. 609(b) (emphasis added).

the first degree and burglary in the first degree, under the subsection pertaining to displaying what appears to be a firearm, and was allowed to plead guilty to a lesser charge on the indictment—grand larceny. Edelman Letter, Ex. A at 6. While armed robbery is a theft crime, it has more of the characteristics of a crime of violence, which bears only marginally on questions of honesty and veracity. *See United States v. Serrano*, 192 F. Supp. 3d 407, 412 (S.D.N.Y. 2016).

The limited probative value of these convictions does not appear to outweigh their potential for unfair prejudice. Although multiple convictions can be used to impeach a defendant under Rule 609, "[o]nce a prior felony has been presented to the jury, the incremental [probative] value of additional convictions may be diminished." *United States v. White*, No. 08-CR-0682, 2009 WL 4730234, at *5 (E.D.N.Y. Dec. 4, 2009). Indeed, admitting multiple convictions risks that "the jury is more likely to view the testifying Defendant as having a propensity to commit a crime . . . . than having a propensity to be dishonest." *Id.* at *6. Further, admitting the larceny conviction would carry a particular potential to prejudice Markus if I also admitted his 2012 drug sale conviction. While neither offense is especially similar to the charged crime, which involved kidnapping someone at gunpoint and extorting him for money and drugs, taken together they may begin to resemble it. Thus, if Markus testifies, I anticipate that the government will likely fail to carry its burden to admit these convictions under Rule 609**.**

Finally, it is very unlikely that I will allow the government to impeach Markus with his 1999 conviction for robbery in the third degree. Since robbery requires the use of force or the threat of force under New York law and thus is more a crime of violence than a theft offense, its probative value as to Markus's veracity is limited. *Serrano*, 192 F. Supp. 3d at 412. And given that this case involves armed kidnapping and extortion, there is a danger that a robbery conviction is similar enough to the charged crime to cause the jury to view Markus as having a propensity to

commit this kind of crime. I therefore doubt that the government will be able to show that the probative value of this conviction substantially outweighs its prejudicial effect.

There is also a second reason why it is unlikely that I will allow the government to impeach Markus with his 1999 conviction. The prison records submitted by the government indicate that Markus was adjudicated a youthful offender for this offense. *See* Edelman Letter, Ex. B (indicating that Markus's most serious prior offense was "YO-ROBBERY"). Rule 609 allows for impeachment by criminal convictions, but not juvenile adjudications, and under New York law a youthful offender adjudication is not considered a criminal conviction. *See* N.Y. Crim. Proc. Law § 720.35(1) ("A youthful offender adjudication is not a judgment of conviction for a crime or any other offense."). Although the Second Circuit has not squarely held that a youthful offender adjudication may not be used to impeach a testifying defendant under Rule 609, it has indicated that it may not. In *United States v. Burrell*, the defendant challenged the admission of his plea allocution to an offense for which he received a youthful offender adjudication. 289 F.3d 220, 223–24 (2d Cir. 2002). The court found that the defendant's argument that this allocution was inadmissible under Rule 609(d) "is correct but irrelevant. The government sought to admit the plea allocution not to impeach Banks pursuant to Rule 609(d) but rather as direct evidence. " *Id.* at 224. As well, prior to the adoption of Rule 609(d), the Second Circuit stated "that a New York state youthful offender adjudication should normally be inadmissible in federal court to attack the credibility of a defendant." *United States v. Canniff*, 521 F.2d 565, 569 (2d Cir. 1975). I acknowledge that the Second Circuit has treated New York youthful offender adjudications as the equivalent of adult criminal convictions in other contexts. *See, e.g.*, *United States v. Driskell*, 277 F.3d 150, 154 (2d Cir. 2002) (holding that, for purposes of the sentencing guidelines, a youthful offender adjudication can be considered in calculating a

defendant's criminal history in some cases). Nonetheless, I will likely follow the Second Circuit's

lead in finding this conviction inadmissible to impeach Markus under Rule 609(d).

### B.  As to Crumble

The government seeks to introduce evidence under Rule 609(a)(1) of Crumble's 2005

New York conviction for robbery in the first degree, for which he was sentenced to eight years

of imprisonment. Gov't MiL 18. He was released from confinement for this crime in July 2014,

under four years ago. *Id.* at 19. Crumble opposes the admission of this evidence; in the

alternative, he requests that the statutory name of this offense, the length of the sentence

imposed, and the fact that the conviction came after a trial be omitted. Crumble Resp. 1–4.

Applying the *Brown* factors, I find that this conviction will likely be admissible under Rule

609 but that, if it is admitted, I will likely exclude evidence of the statutory name or nature of the

offense. As I noted above, the probative value of a robbery conviction as to a defendant's

character for truthfulness is limited. And the prejudicial effect of this conviction is potentially

substantial, given its similarity to the charged crime. On the other hand, the recent date of

Crumble's release from custody weighs in favor of this conviction's admission under Rule 609.

While Crumble argues that "the underlying conduct occurred close to 15 years ago, when he was

only 19 years old," *id.* at 3, the structure of the Federal Rules of Evidence suggest that the

probative value of a conviction is affected by time spent in the community since a conviction,

not the time since the conviction. The more stringent standard of Rule 609(b) comes into play

only if it has been over ten years since a witness's release from confinement—and here it has

been less than four. Given that this factor weighs heavily in favor of admission, if Crumble

testifies I will likely find that the probative value of admitting the fact of this conviction

outweighs its prejudicial effect. If I admit this conviction under Rule 609, I will likely also find

that the probative value of the length of this sentence outweighs its prejudicial effect: although an eight-year sentence may suggest to the jury that Crumble "committed a serious and possibly violent crime," *Giles v. Rhodes*, No. 94-ccv-6385, 2000 WL 1425046, at \*13 (S.D.N.Y. Sept. 26, 2000), it also indicates "a lack of respect for the law." *United States v. Joe*, No. 07 Cr. 734, 2008 WL 2810169, at \*4 (S.D.N.Y. July 21, 2008). On the other hand, I will likely find that the low probative value of allowing the government to elicit the statutory name or nature of the offense does not outweigh the potential prejudice from the jury hearing that it was a robbery. I therefore anticipate that, if this conviction comes in, I will exercise my discretion to limit the information elicited to the date of the conviction, the fact that it was a felony, and the sentence imposed. *See Estrada*, 430 F.3d at 617; *Brown*, 606 F. Supp. 2d at 312, 319–21.

## Conclusion

For the foregoing reasons, I will likely grant the government's motion to admit certain evidence against Markus in its direct case in substantial part, but deny this motion as to Markus's 2012 conviction and as to any proposed testimony about his prior drug dealings that do not involve Doe or Individual 1. I also anticipate that I will grant in part the government's motion to admit evidence in its direct case against Crumble, but not permit the proposed evidence of a robbery attempt that occurred *after* the date of the charged crimes or the cell phone scheme. If Markus testifies, I will likely grant the government's application to introduce his prior convictions as to his 2012 drug sale conviction, but deny its motion as to Markus's 2006 grand larceny conviction, his 2006 drug possession conviction, and his 1999 robbery conviction. Finally, if Crumble testifies, I will probably grant the government's application to admit his prior robbery conviction into evidence as to the fact of the conviction, its date, and the length of his sentence, but likely deny this request as to the statutory name or nature of this offense.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:      May 1, 2018
             Brooklyn, New York