UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>— against —<br><br>Michael Crumble and Ramell Markus,<br><br>Defendants. | **18-cr-32 (ARR)**<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

Michael Crumble and Ramell Markus were convicted by jury verdict of kidnapping, kidnapping conspiracy, and committing physical violence in furtherance of extortion. Mr. Crumble and Mr. Markus now move for a judgment of acquittal and for a new trial under Federal Rules of Criminal Procedure 29 and 33. Crumble argues that the evidence is insufficient to sustain a conviction on these three counts and seeks to join any motions filed by his co-defendant. Letter of Kannan Sundaram 1–2 ("Crumble Post-Trial Mot."), ECF no. 110. Markus argues for a new trial based primarily on judicial bias, arguing that the court unduly restricted his cross-examination and engaged in a pattern of sustaining government objections while overruling defense objections. Mot. for Acquittal and a New Trial 5–7 ("Markus Post-Trial Mot."), ECF No. 111.[1] Markus also takes issue with a comment made by the government during its rebuttal summation, which he views as improper vouching for the credibility of a witness. *Id.* at 6–7. The government opposes both motions. Letter of Keith Edelman (Gov't Opp."), ECF no. 112. For the following reasons, the Rule 29 and Rule 33 motions are denied.[2]

---

[1] As the memorandum of law filed by Markus is not paginated, citations to page numbers for this motion refer to the page numbers generated by ECF at the top of the document.

[2] Mr. Markus also filed *pro se* Rule 29 and Rule 33 motions, which I will deal with separately.

**Discussion**

I. **Rule 29 Motion**

"Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). A district court must view the evidence in the light most favorable to the government, draw all permissible inferences in its favor, and "grant a judgment of acquittal *only* 'if the evidence that the defendant committed the crime alleged was nonexistent or . . . meager.'" *Id.* (emphasis added) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)).

Here, the defense cannot meet its "heavy burden," *id.*, on a Rule 29 motion. On the contrary, there was ample basis for a rational factfinder to find the defendants guilty beyond a reasonable doubt of all three counts of conviction. Specifically, there was the testimony of the complainant Daniel Nieves, his girlfriend, and cooperating witness Tyrone Burch, as well as surveillance video, photographs, rental car records, and text messages. Gov't Opp. 3.

Indeed, neither defendant provides any argument for why the evidence was insufficient, or points to any element where the proof was lacking. Crumble argues in *pro forma* fashion that "no rational trier of fact could fairly conclude from the government's evidence that each and every essential element of those crimes has been proven beyond a reasonable doubt" without providing any factual support for this proposition. *See* Crumble Post-Trial Mot. 1. And Markus sets out the legal standard for a Rule 29 motion without ever actually arguing that a rational factfinder could not find him guilty. *See* Markus Post-Trial Mot. 4. The paucity of these submissions tends to prove the point: the defendants do not point to any specific deficits in the evidence because there were none. The defendants' Rule 29 motions are therefore denied.

## II. Rule 33 Motion

Rule 33 provides that, upon defense motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33(a). "In deciding a Rule 33 motion, '[t]he test is whether it would be a manifest injustice to let the guilty verdict stand. For a trial judge to grant a Rule 33 motion, [s]he must harbor a real concern that an innocent person may have been convicted.'" *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (first alteration in original) (quoting *United States v. Lin Guang,* 511 F.3d 110, 119 (2d Cir.2007)). There is no such manifest injustice here in letting the guilty verdict stand.

Markus nonetheless contends that he should be granted a new trial under Rule 33 because of "the rulings of the Court on both the cross examinations conducted by counsel, the continual limitation on the cross examination of counsel, prosecutorial misconduct in the summation of the Government and the bias shown by the court to Mr. Markus through its rulings[.]" Markus Post-Trial Mot. 5. These arguments are meritless.

### A. *The limitations on Markus's cross-examination were appropriate.*

Markus's first set of arguments has to do with the court's sustaining of objections to his counsel's cross-examination, which he argues unduly restricted his Sixth Amendment right to confrontation. He tallies up the number of times I sustained the government's objections versus the number of the times I sustained the objections of his defense counsel, finding that I sustained a far higher percentage of the government's objections. *Id.* at 6. He argues that this disparity is "a clear and convincing showing of bias" against him. *Id.* Further, he claims, "[t]he tenor of the court's rulings and its limitations upon the [d]efendant's right to adequately cross-examine the main witnesses acted in total to deny the [d]efendant a fair trial." *Id.* But, with the

3

exception of one allegation of prosecutorial misconduct discussed below, he fails to articulate any particular instance where I sustained—or failed to sustain—an objection in error. *See id.*

Although I have not independently verified Markus's calculations, I do not quibble with his assertion that I sustained a higher percentage of government objections. Nevertheless, simply counting up these numbers proves neither bias nor error. Quite simply, I sustained a greater percentage of government objections based on the nature of the objections. For example, Markus's counsel repeatedly misstated evidence in his questions and summation. *See, e.g.*, T. 406–07, 418–20, 432–33, 445, 446–47, 449, 973. That I sustained objections to these misstatements is not evidence of bias.

Moreover, what Markus characterizes as an improper limitation on his right to cross-examine the witnesses against him was, in my view, an attempt to limit questions that were irrelevant, repetitive, or argumentative. A few examples will suffice to illustrate the point. First, after cooperating witness Tyrone Burch stated that he did not know who his brother tried to sodomize during a prior robbery, counsel repeatedly tried to ask Burch if he knew who his brother tried to sodomize. T. 161–62. Similarly, after Burch testified that he had not told the government about robbing three people outside of a house, counsel asked him whether this was one of the things he did not tell the government. T. 164–66. And after the complainant's girlfriend testified that the complainant got money from Maine and brought it to New York but that she was not sure if he had brought drugs to Maine, counsel asked whether she thought he was transporting money or drugs when he went up to Maine. T. 231–32. This is not cross-examination; it is repetition. Cross-examination does not license counsel to argue with witnesses; instead, it entitles counsel to question witnesses and probe their answers—and I afforded Markus's counsel an opportunity to do just that.

4

In support of his argument that I unduly curtailed his cross-examination, Markus cites *Chambers v. Mississippi*, 410 U.S. 284 (1973). *Chambers*, however, is inapposite. It deals with a defendant who was denied entirely the opportunity to cross-examine a crucial witness—who had repudiated his prior confessions after being called to testify by the defense—because of a state evidentiary rule that "a party may not impeach his own witness." *Id.* at 296. But *Chambers* does not call into question that the right to cross-examine "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 295. And, here, despite his sweeping language about a denial of his right to cross-examination, Markus does not point to any line of proper cross-examination that I precluded—nor I am aware of any. I allowed Markus's counsel ample latitude to impeach the government's witnesses and provide the jury with "sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)). Although I did not permit counsel to ask the same questions repeatedly, this is precisely the kind of limitation on the scope and extent of cross-examination that a court may impose. *See id.*

### B. *Neither the court nor the government acted improperly during summations.*

In addition to arguing that the court was generally biased, Markus takes particular issue with the conduct of the court and the government during summations. Markus Post-Trial Mot. 6. He claims that during summations "the court simply ignored defense counsel's objections, refused to hear argument at sidebar and simply refused to require the government to proceed in a legal fashion," by which he appears to be complaining that the court refused to hear argument on the issue of whether the government was improperly bolstering the credibility of its main witness during its rebuttal summation. *See id.* at 6–7. He also asserts that the court "continually

5

point[ed] out to the jury" that defense counsel's summation was argument, not evidence, but did not issue the same instruction during the government's summations. *Id.* at 6. As well, he objects to "the interruption" of his counsel's "presentation of . . . arguments in summation." *Id.* at 7.[3]

While Markus does not point to any specific occasions during summations when I refused him a sidebar, my review of the transcript disclosed only one such instance. When the government made use of some demonstrative graphics that Markus's counsel had shown to the jury during his summation, I denied counsel's request for a sidebar because I had already ruled on the issue before the prosecution's rebuttal summation. *See* T. 1022–25 (ruling on issue); T. 1026 (denying sidebar). But, as a matter of fact, I also called multiple sidebars during the government's rebuttal summation in response to defense objections. *See* T. 1032–34, 1043–45.

Indeed, it is somewhat ironic that Markus would claim that the court "refused to hear argument at sidebar" as his counsel repeatedly refused my directives to discuss objections made during his summation at sidebar. *See* T. 962, 970, 974. Instead, counsel openly disputed my rulings in front of the jury. *See, e.g.,* T. 968, 974, 975. While the wording of these exchanges is evident from the transcript, the cold transcript does not fully convey the tenor of counsel's behavior—or the decibel level of his arguments. Eventually, in an effort to defuse the situation by speaking to counsel outside of the presence of the jury, I temporarily excused the jury during counsel's summation. *See* T. 975–80. I presume that this effort to restore courtroom decorum is what Markus is referring to when he refers to "the interruption" of his counsel's presentation of arguments in summation.

---

[3] As Markus fails to provide a single example or textual citation in support of his complaints that I ignored defense objections and that I instructed the jury that his summation was argument but did not issue similar instructions during the government's summation, I cannot address these claims. I note, however, that I did give such an instruction at least once during the government's rebuttal. *See* T. 1032 ("I said the same thing during defense counsel's argument. Summations are argument.").

Finally, Markus objects to what he characterizes as the government's "attempt[] to bolster the credibility of its main witness by stating that Mr. Nieves wouldn't lie because his lawyer was in the courtroom during his testimony." Markus Post-Trial Mot. 6–7 (citing T. 1048). But the government never said that Nieves would not lie; rather, it argued only that he testified without the protection of a non-prosecution agreement and "[w]ith his lawyer in the courtroom the entire time he was here." T. 1048. Then, after I overruled an objection to this argument, the government went on to ask the jury to consider these facts when evaluating the complainant's credibility and his incentives to lie or testify truthfully. T. 1048–49. Viewed in context, far from vouching for the credibility of a witness, the government's statements were the kind of argument about a witness's incentives to testify truthfully that the Second Circuit has explicitly permitted. *See United States v. Carr*, 424 F.3d 213, 228–29 (2d Cir. 2005). They were also a fair response to the defense's extensive attacks on the "integrity of [the government's] case." *Id.* at 227.

In sum, Markus has failed to show that allowing the guilty verdict to stand would be a manifest injustice. Nor do I harbor any concerns that an innocent person may have been convicted in this case. To the contrary, the evidence at trial amply demonstrated the guilt of both Markus and Crumble. The Rule 33 motion is therefore denied. *See James*, 712 F.3d at 107.

## Conclusion

For the foregoing reasons, the defendants' Rule 29 and Rule 33 motions are denied.

Dated:    June 19, 2018                        _____/s/_____
             Brooklyn, New York               Allyne R. Ross
                                                            United States District Judge