UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>— against —<br><br>Michael Crumble and Ramell Markus,<br><br>Defendants. | **18-cr-32 (ARR)**<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

Michael Crumble and Ramell Markus were convicted by jury verdict of kidnapping, kidnapping conspiracy, and committing physical violence in furtherance of extortion.[1] I previously denied Markus' and Crumble's post-trial motions for an acquittal under Rule 29 and a new trial under Rule 33. See Op. & Order, ECF No. 118. For the following reasons, I also deny Markus's *pro se* Rule 29 motion, Rule 33 motion, and motion for new counsel. Further, I direct Markus to file no further *pro se* motions, as he does not have a right to "hybrid representation."

## DISCUSSION

### I. Markus's motion for a post-trial acquittal is meritless.

"Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). A district court must view the evidence in the light most favorable to the government, draw all permissible inferences in its favor, and "grant a judgment of acquittal *only* 'if the

---

[1] In his *pro se* motions, Markus refers to himself as "Ramell Marcus." For the sake of consistency, however, I will adhere to the spelling of his last name used in the indictment and other documents.

evidence that the defendant committed the crime alleged was nonexistent or . . . meager.'" *Id.* (emphasis added) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)).

Here, Markus cannot meet his "heavy burden," *id.*, on a Rule 29 motion. He provides eight sequentially numbered reasons why he should be granted a new trial. *See* Mot. for New Trial Under Federal Rule 29, ECF no. 113. Each is meritless. I will address them in turn.

Markus's first and second arguments ask the court to dismiss the indictment because the complainant, Daniel Nieves, perjured himself in the grand jury. For substantially the reasons given by the government, there was ample evidence before the grand jury to support its indictment. *See* Letter of Keith D. Edelman 7–8 (June 22, 2018), ECF No. 121 ("Gov't Opp."). Moreover, the supposed perjury that Markus complains of came to light at trial, and was the subject of significant cross-examination. Given that the jury nonetheless found that there was proof beyond a reasonable doubt of each element of the charged crimes, these false statements do not provide a reason to impugn the grand jury's finding of probable cause.

Markus's third argument misconstrues both the record and the law. As to the record, although Markus complains that the recording of the phone call Nieves received from cooperating co-defendant Tyrone Burch was incomplete, Nieves in fact testified that this recording was complete "with an exception of 30 seconds at the beginning because I didn't have a way of recording it for the first 30 seconds." T. 363. Nieves also testified that this recording was split into two separate audio files because the original was too large to transmit. T. 367.

As to the law, contrary to Markus's claim, the person who actually recorded the phone call after Nieves put it on speakerphone was not necessary to authenticate the recording. It was sufficient for authentication that Nieves—a participant in the conversation—testified that "the contents of th[e] cd fairly and accurately depict[ed]" his conversation with Burch. T. 363.

2

Markus's fourth argument again misconstrues the law. Contrary to his claim, there is no requirement that the government prove that the defendants moved the victim across state lines. Crossing state lines is not an element of the crime of kidnapping. *See* 18 U.S.C. § 1201. Further, the defendants' use of cell phones in committing this crime was sufficient to provide a "jurisdictional nexus" to prosecute them for kidnapping. *See* 18 U.S.C. § 1201(a)(1) (permitting prosecution for kidnapping when "the offender . . . uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense") *United States v. Giordano*, 442 F.3d 30, 39–41 (2d Cir. 2006) (holding that the intrastate use of a cell phone constitutes the use of "a facility in interstate commerce"); *see also United States v. Ramos*, 622 F. App'x 29, 30 (2d Cir. 2015) (summary order) (holding that the use of a cell phone during a kidnapping satisfied § 1201(a)'s "jurisdictional element").

Markus's fifth argument is also unsupported by law. Contrary to his unsupported claim, there is no requirement to provide a medical report—or receive medical treatment—in order to present evidence of injury. Testimony and photographs about injuries are admissible evidence.

Markus's sixth argument is that the introduction of "evidence that Mar[k]us, Crumble and Burch were all [i]ncarcerated" was reversible error. It is also meritless for substantially the reasons advanced by the government. *See* Gov't Opp. 10 (citing Fed. R. Evid. 403).

Markus's seventh argument is that his rights were violated by the court's discussion of his *pro se* motions with counsel outside his presence. *See* T. 274–77. For this proposition, he relies on inapposite state cases. But Markus had no right under federal law to be present at what amounted to a housekeeping discussion of the nature of these *pro se* submissions. *See* Fed. R. Crim. P. 43(b)(3; *Salley v. Graham*, 07 Civ. 455, 2008 WL 818691, at *4 (S.D.N.Y. Mar. 27, 2008).

3

Finally, Markus's eighth argument misapprehends the record yet again. He complains that the court had agreed to add language regarding a consent defense to the jury charge, but omitted this language from the final charge. Specifically, he requested that I charge the jury with regard to the first element of the charged crime of kidnapping that "[i]f you find that Daniel Nieves consented, you must find him not guilty." T. 893–94. Ultimately, I did not use Markus's requested language, however, because I was concerned that it improperly shifted the burden of proof onto the defense. *See* T. 1106–07. Instead, I instructed the jury as to the first element of kidnapping that "*the government must prove* beyond a reasonable doubt that the kidnapping was against Daniel Nieves's will and without his consent." T. 1080 (emphasis added). I added this language to the jury charge in order to convey the essence of Markus's requested consent charge while making clear that the burden of proof remained on the government. *Compare id.*, *with* Draft Jury Instructions, ECF No. 99, at 22 (which does not contain this language).

## II.     The interest of justice does not require a new trial.

Rule 33 provides that, upon defense motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33(a). "In deciding a Rule 33 motion, '[t]he test is whether it would be a manifest injustice to let the guilty verdict stand. For a trial judge to grant a Rule 33 motion, [s]he must harbor a real concern that an innocent person may have been convicted.'" *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (first alteration in original) (quoting *United States v. Lin Guang*, 511 F.3d 110, 119 (2d Cir.2007)). There is no such manifest injustice here in letting the guilty verdict stand.

Markus argues that he should be granted a new trial because, the day after the jury verdict, he received a letter from Burch that contradicted Burch's trial testimony. *See* Mem in

Supp of Mot. for New Trial Under Fed. Rule of Crim. Proc. 33, ECF no. 120.² This letter, in relevant part, stated "You knew about his activities in Maine (gay)..., You introduced him to me because you knew his lifestyle, we partied together, while you and Mike partied together with the hookers. He didn't want his fiancé to find out his (lifestyle)." *Id.* at 4 (quoting letter). According to Markus, this "letter demonstrates that a party took place on December 18th [2017], not a kidnapping. Marcus and Crumble partied in one hotel room with prostitutes; Burch and Nieves, the supposed 'victim,' had consensual sexual intercourse in another hotel room." *Id.*

Even assuming that I credit Markus's story that the document he attached to his motion is in fact a letter from Burch that he only received after trial,³ his Rule 33 motion fails. This letter would at most constitute "cumulative impeachment material," Gov't Opp. 6, but "a new trial is not required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *James*, 712 F.3d at 107 (quoting *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007)). Here, not only did Burch "not supply the 'only evidence linking [Markus] to a crime,'" he was also "thoroughly cross-examined about his cooperation agreement, his prior crimes . . . and the fact that he committed the instant offense while on bail for a state narcotics offense." Gov't Opp. 6. It is hard to imagine what cross-examining him about this supposed letter would add, especially given that any defense that the complainant's story of a kidnapping was simply a cover-up for an affair would have to explain away the photographs of the complainant's extensive injuries.

---

² In his cover letter, Markus requested that the court accept this amended Rule 33 motion in lieu of his initial Rule 33 motion. Accordingly, I will address only the amended *pro se* Rule 33 motion.

³ I am more inclined to credit the government's account that this "letter" is actually the notes Burch made of his discussions with Markus regarding possible (false) defenses and gave to Markus between April 6 and April 9, 2018— well before trial. *See* Gov't Opp. 2–3, 5–6. But, as I discuss below, it is not necessary to resolve any such questions of disputed fact in order to rule on this motion.

5

Moreover, this supposed letter only appears to refer to "conduct that occurred while the perpetrators and the victim were at the Imperial Hotel." The evidence at trial was that Markus and Michael Crumble "partied together with the hookers" in one room at the Imperial Hotel while Burch and Nieves were in another room. But Nieves was kidnapped at gunpoint and then tortured at other locations before this incident moved to the Imperial Hotel. Gov't Opp. 6. Even if the jury believed that all that happened at the Imperial Hotel was consensual sex, they could have still found the defendants guilty beyond a reasonable doubt of the charged crimes.

In sum, "there is no 'reasonable probability' that the outcome of the defendants' trial would have been different had the contents of [the post-trial letter from a cooperating witness] been disclosed, even if believed." *James*, 712 F.3d at 107. Markus's motion is therefore denied.

### III. There is no basis for the substitution of counsel.

Ramell Markus has also renewed his motion for new counsel in a *pro se*, post-trial filing. Mot. for Reconsideration of Substitution of Counsel, ECF No. 119. The only new ground he gives for this motion, however, is that his counsel failed to file a Rule 29 motion. *See id.* at 4–7.

In order to obtain new counsel, a defendant "must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)). That counsel failed to file a frivolous motion does not provide the good cause necessary to obtain new counsel, especially given that assigned counsel did in fact file a Rule 33 motion asking for a new trial and Markus filed his own *pro se* Rule 29 motion anyway. "While loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence." *Id.* at 932. Markus has failed to do so.

6

IV.  **No further *pro se* submissions will be entertained from Markus.**

"A defendant has a right either to counsel or to proceed pro se, but has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into pro se mode for selected presentations." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016) (internal citation omitted). As Markus has not elected to represent himself, he does not have "a right to make a motion on his own behalf," nor does he have "a right to insist that the district court hear his application[s]." *Id.* & n. 5. While I have previously exercised my discretion to entertain Markus's *pro se* submissions, *see id.* n. 5, I will do so no longer. If Markus wishes to file any further motions, he is directed to ask his trial counsel—or appellate counsel—to adopt this motion. I trust that assigned counsel will file any motions that they do not view as frivolous on Markus's behalf. Any *pro se* motions made by Markus, however, will be summarily denied.

## Conclusion

For the foregoing reasons, Markus's *pro se* post-trial motions are denied. Markus is also directed to refrain from filing any further *pro se* submissions, since he is represented by counsel.

Allyne R. Ross
United States District Judge

Dated: June 25, 2018
Brooklyn, New York